### MILLS v. CITY OF CHICAGO et al.

(Circuit Court, N. D. Illinois. January 25, 1904.)

**1. MUNICIPAL CORPORATIONS—POWERS—REGULATING PRICE OF GAS.**

The regulation of the prices to be charged consumers by gas companies is not one of the powers essential to municipal government, and is not included in general powers conferred on cities; and such power cannot be exercised by a city unless it has been delegated by the state in express words, or by fair implication from a power expressly granted.

2. SAME—CONSTRUCTION OF ILLINOIS STATUTE.

 Section 66 of the Illinois city and village act (Hurd's Rev. St. 1901, c. 24), which confers on cities and villages the power "to regulate the police of the city or village and pass and enforce all necessary police ordinances," applies only to the regulation of the local constabulary, and does not delegate to cities and villages the general police powers of the state.

3. SAME.

 The Illinois city and village act (Hurd's Rev. St. 1901, c. 24), which confers on cities and villages the power to provide for the lighting of streets, and to regulate the openings therein for the laying of pipes, and gives gas companies the right to build factories and lay down pipes in the streets, "subject to such regulations as any such city or village may by ordinance impose," does not delegate to cities or villages the power to regulate the prices which a gas company may charge to private consumers, but merely the use of the streets by such companies.

4. EQUITY JURISDICTION—PREVENTING MULTIPLICITY OF SUITS.

 Equity has jurisdiction of a suit to enjoin the enforcement of an invalid ordinance fixing the price to be charged by a gas company to consumers, where they are numerous and the ordinance imposes a penalty for each violation, on the ground of preventing a multiplicity of suits.

5. JURISDICTION OF FEDERAL COURTS—SUIT BY STOCKHOLDER—ALIGNMENT OF PARTIES.

 In a suit by a stockholder of a gas company against the company and a city to restrain the enforcement of an ordinance fixing rates to be charged by the company to consumers, the fact that the company is incorporated in the same state as the city does not deprive a federal court of jurisdiction.

6. SAME—COLLUSION BETWEEN PARTIES.

 Where the bill of a stockholder complies with the requirements of equity rule 94, by proper allegations of demand on the company to bring the suit, and its refusal, the court cannot determine on demurrer that such action was collusive.

7. CORPORATIONS—SUIT BY STOCKHOLDER—PENDENCY OF SUIT BY CORPORATION.

 A gas company brought suit in a federal court against a city of the same state to enjoin the enforcement of an ordinance on two grounds, one of which involved a constitutional question. The court determined such question adversely to complainant on demurrer, and dismissed the bill for want of jurisdiction, but without prejudice to a suit in a proper forum upon the other ground, which the court refused to consider on the merits. *Held*, that the pendency of an appeal from such decree of dismissal did not prevent the company from bringing such second suit, and that its refusal to do so on demand of a stockholder gave him the right to bring it in his own name.

In Equity. On demurrer to bill.

W. D. Guthrie, for complainant.

Granville Browning, for defendant city of Chicago.

GROSSCUP, Circuit Judge. The bill is by a citizen of California, a stockholder of the Peoples Gas Light and Coke Company, suing in behalf of himself and all other stockholders of the company similarly situated, against the city of Chicago and the gas company, citizens of Illinois. The object of the bill is to restrain the city from enforcing an ordinance passed by the city council of Chicago, October 15th, 1900, forbidding manufacturers of gas from demanding or collecting, from consumers of gas within the city, more than seventy-five cents per

¶ 5. Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249, and Mason v. Dullagham, 27 C. C. A. 298.

thousand cubic feet, and attaching a penalty of from twenty-five to two hundred dollars to each violation thereof. The bill charges that the ordinance is invalid; first, because the city council had no power from the state, to regulate gas rates; and secondly, because the ordinance impairs the obligation of an alleged contract embodied in the special charter of the Peoples Company by act of the legislature February 7th, 1865 (1 Laws 1865, p. 589). Relief in equity is asked on the ground of prevention of multiplicity of suits, and because there is no adequate remedy at law to protect the company's rights in the premises.

Prior to the commencement of this suit, as the bill shows, another suit had been instituted by the Peoples Gas Light and Coke Company against the city of Chicago, based upon the ordinance in question, charging first, that such ordinance was beyond the city council's delegated powers, and secondly, if enforced, would impair the company's contract rights under its charter, and asking the same character of relief. That suit went to final hearing on demurrer to the bill, resulting in a decree dismissing the bill upon the merits, as to the alleged contract right, but without prejudice to any other suit in respect to the question of the city's power to regulate rates; and on appeal from this decree by the company, the suit is now pending in the Supreme Court of the United States.

In that case I held that the gas company obtained no immunity in its charter from the right of the state, in the exercise of its general powers, to reasonably regulate the rates at which gas should be manufactured and sold. Thus holding, the jurisdiction of the court failed, for the case no longer could be said to arise under the constitution and laws of the United States. On that account I expressly declined to pass on the question whether the city council had power delegated to it from the state to regulate rates; holding that such question was not before the court. But in the suit now under consideration, that question is brought directly in point.

The right of Mills, a stockholder, to maintain this bill, on the state of facts here existing, is challenged. Though it lies at the threshold of the case I will pass that question until the main question—the power of the city of Chicago to regulate rates of gas—is disposed of.

Has the city the power by ordinance to regulate the rates of gas supply? A municipal corporation possesses only such power as is granted by the legislature in express words, or such as is fairly implied from power expressly granted, or is essential to the specific object and purposes of municipal existence. No one has pretended that the regulation of the price of gas is essential to the specific object for which the city of Chicago was created; hence that source of possible power may be dismissed without further discussion.

The chief argument of counsel for the city is, that the power is to be found in the statute of Illinois, known as the City and Village Act, and their finger is laid on the eleventh, thirteenth and sixty-sixth sections as the clauses containing the grant (Hurd's Rev. St. 1901, c. 24, § 62). These sections are as follows:

"The city council in cities, and president and the board of trustees in villages, shall have the following powers:

"Eleventh: To provide for the lighting of the same (streets)."

"Thirteenth: To regulate the openings therein (in streets) for the laying of gas or water mains and pipes, and the building and repairing of sewers, tunnels and drains, and erecting gas lights: Provided, however, that any company heretofore organized under the general laws of this state, or any association of persons organized, or which may be hereafter organized for the purpose of manufacturing illuminating gas to supply cities or villages, or the inhabitants thereof, with the same, shall have the right, by consent of the common council (subject to existing rights), to erect gas factories, and lay down pipes in the streets or alleys of any city or village in this state, subject to such regulations as any such city or village may by ordinance impose."

"Sixty-Sixth: To regulate the police of the city or village, and pass and enforce all necessary police ordinances."

It is plain to me that the sixty-sixth section, while granting power to regulate the police of the city or village, cannot be enlarged to include power to regulate the prices of gas. The power delegated by the state to the city is not the police power of the state. To so construe it would be to invest the city with nearly all the powers of the state—make the city practically a state by itself. Such manifestly was not the purpose of the section. The section looked, not to the police power of the state in its wide constitutional sense, but to a police in the sense of a local constabulary.

The eleventh section contains no such grant as is claimed. Its purpose is to provide merely for the lighting of streets. Power to light streets and power to regulate the prices at which a manufacturer shall furnish his commodity to the city, and the people living within the city, are generically so distinct that no discussion need ensue.

The chief claim of the city is based on the thirteenth section. The section reads as follows:

"To regulate the openings therein (in streets) for the laying of gas or water mains and pipes, and the building and repairing of sewers, tunnels and drains, and erecting gas lights: Provided, however, that any company heretofore organized under the general laws of this state, or any association of persons organized, or which may be hereafter organized for the purpose of manufacturing illuminating gas to supply cities or villages, or the inhabitants thereof, with the same, shall have the right, by consent of the common council (subject to existing rights), to erect gas factories, and lay down pipes in the streets. or alleys of any city or village in this state, subject to such regulations as any such city or village may by ordinance impose."

Read as an entirety, the section clearly grants no general power to regulate rates. Thus treated, the last clause "subject to such regulations as any such city or village may by ordinance impose" relates back to, and is limited by, the opening clause which is taken up solely in the regulation of openings in streets for the laying of gas or water pipes. But the court is asked, first, to divorce the proviso from the balance of the section, so that the proviso may stand as a section apart, and then to interpret the concluding clause as if the word "regulations" was meant to include the rates at which gas should be manufactured and sold, as well as the manner in which the gas factories should be erected and the pipes laid. I do not feel myself at liberty to close my eyes to the proviso. Presumably it was meant to be read in connection with the whole section. But if I did, it would be unavailing. The context shows that the last clause was not intended to confer upon the city council plenary power to regulate rates, as well as the manner in which gas factories should be erected and pipes laid down. The mere

laying of gas pipe, and the installation of gas plants, together with their repair, are the subject matter ·of a power widely separable in circumstance and in substance, from power to deal with the rates at which gas shall be manufactured and sold. The first belongs naturally to the city whose streets are to be occupied, for it is related intimately with the supervision of streets; the latter, with equal reason, is foreign naturally to the city, for the city is one of the parties in interest; and power to regulate prices ought not, in the usual course of affairs, to go to a party interested. Until there is legislation, more unmistakable than the language used in this·section, to indicate a purpose to grant the city power to fix rates, I shall not hold that such was the legislative intent. Unquestionably the power resides somewhere in the state, but until consciously delegated to some other body it remains in the state's general repository of power, the General Assembly of the state.

I may add that in this interpretation, I am but following the opinions of Mr. Francis Adams, Mr. Wm. G. Beale, Mr. C. S. Darrow and Mr. John W. Green, rendered by them severally as Corporation Counsel, as also what I take to be the opinion of Mr. Walker, during his incumbency of that office.

This brings me, then, to the question of jurisdiction. The first point urged is that a court of equity is without jurisdiction to restrain the enforcement of the invalid ordinance. To this I cannot consent. The gas company has more than three hundred thousand consumers. An attempted enforcement of its rates by suits at law, in the face of this invalid ordinance, might lead to three hundred thousand prosecutions. Under what circumstances, it might be asked, would equity take jurisdiction to avoid a multiplicity of suits, if the present were not such a case.

The second point urged is that the jurisdiction of the court as a federal court fails, because, in a proper alignment of parties according to their interest, the gas company should be grouped with the complainant; and on such grouping, diversity of citizenship between both complainants and the defendant would disappear. It is sufficient to say that in the recent case of New Albany Water Works v. Louisville Banking Company, 122 Fed. 776, 58 C. C. A. 576, the Circuit Court of Appeals for this Circuit sustained federal jurisdiction in a case analogous, in all material respects, to the one under consideration.

The third point is, that the suit is collusive in this, that it is apparent that the gas company has refused to bring a suit in its own name in the state courts, to which it was relegated, solely that this complainant might obtain a footing in the federal court. This may, or may not, be the true explanation of the company's inaction. In the present state of the record it cannot be treated as the explanation. The bill avers that Mills demanded of the company, that it bring such suit, and that such demand was refused; and this, on the face of the record, is admitted by the demurrer. When the city raises the question by proper pleading, or points to some fact in the record that would authorize the court to act sua sponte, it will be time to inquire whether collusion in fact exists.

The fourth point against jurisdiction is the one on which greatest stress is laid. In the suit previously heard here, pending now on ap-

peal by the gas company in the Supreme Court, the gas company challenged the validity of the ordinance, both because it was said to impair the company's contract right under its charter, and because the city council was without power delegated to it by the state, to regulate the prices of gas. The court held in that case, that no charter contract as claimed existed, and so holding declined to hear or pass upon the question of delegated authority, for the reason that the cause came into the federal court solely as one arising under the constitution and laws of the United States, wherefore the ground of federal jurisdiction failing, the other question involved—solely one of state law—must go out of court also, though without prejudice to a new suit in the proper forum.

I think, under such circumstances, it to be unquestioned, that had there been no appeal, and had the company refused to bring a new suit in the appropriate tribunal, a suit, such as this, would lie at the instance of a stockholder. But the insistence of counsel is, that the appeal, by the gas company to the Supreme Court, on both grounds, shows that the company is still seeking, in the Supreme Court of the United States, to invalidate the ordinance as one not delegated under the laws of Illinois to the city council, and in so doing meets fully its duty in the premises to its stockholders. The trouble is that such appeal does not fully meet the measure of the company's duty. The suit pending on appeal will not bring a judgment touching the power of the city council, if the impairment of contract question be determined against the company. This court has so held, and there is no reason to believe that the Supreme Court will hold otherwise. At any rate, until it is held otherwise, the former holding remains the law of the case.

But if the company has taken no measure conformable to law to prevent the wrong threatened, the right of the stockholder to take such measures cannot be disputed, and a measure conformable to law is to be tested, not by the company's opinion of the law, but by the law itself. The stockholder is entitled to the law, not to a mistaken view of the law; to an action that will lie, not to an action that must be dismissed for want of jurisdiction in the court resorted to.

The demurrer will be overruled and an injunction entered as prayed for in the bill.