VILLAGE OF OTSEGO *v.* ALLEGAN COUNTY GAS CO.

1. CONTRACTS—GAS—MUNICIPAL CORPORATIONS—FRANCHISE.
   A franchise for a gas company voted by the people of a village and afterwards accepted by the company constituted a contract between the parties.

2. SAME—GAS RATES—METER CHARGES—CONSTRUCTION OF FRANCHISE.
   Where the franchise provided that the rate for gas should not exceed $1.25 per thousand cubic feet, and that meters should be furnished free to the consumer, but that in case no gas was used and the occupant wished to retain the meter he should pay 75 cents per month minimum charge, *held*, no authority to charge a minimum rate of 75 cents per month where gas was used.[1]

3. SAME—BREACH OF CONTRACT—REASONABLENESS OF RATE.
   Where the franchise fixed the rates for gas, the reasonableness of a proposed minimum rate in violation thereof will not be considered by the courts.

Appeal from Allegan; Perkins, J., presiding. Submitted April 19, 1918. (Docket No. 43.) Decided September 28, 1918.

Bill by the village of Otsego against the Allegan County Gas Company to enjoin the collection of illegal charges. From a decree for plaintiff, defendant appeals. Affirmed.

*Wilkes & Stone*, for plaintiff.

*A. H. Ryall*, for defendant.

BIRD, J. In July, 1911, the village of Otsego voted by a three-fifths vote to grant to one C. A. Runyan a franchise to erect and operate a gas plant in the village for a period of 30 years. On July 29, 1911, the franchise was accepted in writing by the said

[1]See note in 26 L. R. A. (N. S.) 1109.

Runyan and filed with the village clerk. Soon there-after the franchise was assigned by Runyan to the defendant. Defendant installed the plant and has been furnishing gas to the people of Otsego for five years and upwards, as is claimed, in accordance with the terms of the franchise. In February, 1917, de-fendant addressed a letter to its patrons, notifying them: "That on and after March 1, .1917, the Alle-gan County Gas Company will expect a minimum re-turn of seventy-five cents per month from each of its meters," and advising them that this was made nec-essary by reason of the increased cost of materials and labor. The village authorities took the view that this charge was an illegal one and not justified by the franchise. This suit was filed to enjoin defendant from enforcing the collection of the increased rate. The sections of the charter which are material to the questions involved are the following:

"SECTION VIII.—RATES.—The rights and privileges herein granted are upon the express condition that said grantee and his assigns shall furnish merchant-able, illuminating and heating gas to consumers, ac-cording to the provisions herein, and shall not charge or receive any higher rate for gas furnished the in-habitants of said village of Otsego than the following, to wit: (a) Until the village of Otsego shall attain a population of ten thousand (10,000) people the rate shall be not to exceed one dollar and twenty-five cents ($1.25) per thousand cubic feet. * * *

"VI.—All meters used for the purpose of furnishing gas for any purpose shall be furnished by said grantee and assigns, free of charge. Said grantee and assigns may remove meters from the premises of any person occupying same, providing no gas has been used for the period of a month; but if the occupant of such premises shall pay seventy-five (75) cents per month minimum charge, such meter or meters shall not be removed by the said grantee or assigns."

Plaintiff's construction of these franchise provi-

sions is that the maximum price of gas is fixed and definite and therefore whether much or little gas is used in a month, no more than the contract rate can be legally charged therefor. That no meter charge can be made except the one provided for in the franchise.

Defendant contends that it has a right to make the minimum charge, and gives the following reasons in support thereof:

"1st. Because the right to make a minimum charge is expressly recognized in the sixth paragraph of the franchise.

"2d. Because to hold that this minimum charge could not be made would result in requiring consumers who use no gas to pay the charge in question, while those who used some gas would be relieved of it.

"3d. Because the defendant has the inherent right to make reasonable charges of this sort, unless clearly restricted by the terms of its franchise or by other legislation, and there is nothing in the franchise which specifically forbids the making of a minimum charge.

"4th. Because the fact that a franchise forbids the making of a meter rental negatives any intention to prohibit the making of other reasonable charges, such as the minimum charge in question."

The chancellor who heard the case was persuaded that the contentions of plaintiff should prevail and a decree was made enjoining defendant from putting the increased rate into effect.

1. Defendant's assignee was desirous of obtaining a franchise from plaintiff to install and operate a gas plant. The franchise was voted by the people and afterwards accepted by him. The relations of these parties are therefore one of contract. 28 Cyc. p. 880; *City of Traverse City* v. *Telephone Co.*, 195 Mich. 373.

The contract is not ambiguous. It plainly states that "the rate shall be not to exceed one dollar and twenty-five cents ($1.25) per thousand cubic feet."

If the consumer uses four hundred feet of gas in a month at the rate stated he would owe the company fifty (50) cents. If, instead, he be charged seventy-five (75) cents therefor he is charged a rate in excess of $1.25 per thousand cubic feet, and this the contract forbids. To give the contract the construction contended for by counsel it would be necessary to read into it, "that consumers using less than six hundred feet in any month will be charged a minimum fee therefor of seventy-five (75) cents."

Counsel, however, argues that section VI authorizes a minimum charge for gas of seventy-five (75) cents, that the meter must be furnished free of charge, and that if no gas is used in any given month the meter may be removed, unless the consumer pays the minimum charge of seventy-five (75) cents *for gas*. Section VIII deals with the price of gas and fixes the price definitely. Section VI deals with meters. Had this been the intention it would doubtless have been expressed in paragraph VIII, which fixes the price to be paid for gas. Having dealt with it in the paragraph devoted to meters, it is fair to assume that the charge has reference to meters and not to gas. We cannot accept counsel's argument that a meter charge is forbidden by section VI. A meter charge is not forbidden by section VI in a certain contingency. The meter in the first instance must be furnished free to the consumer and he may use it free of charge as long as he uses some gas each month. If he desires to retain it, without using any gas, he must pay seventy-five (75) cents per month, or be deprived of it. In other words, the consumer is furnished a mechanical device free. He may retain it in one of two ways; either by taking gas each month, or paying seventy-five (75) cents each month. Under such a regulation we think the average mind would conclude that he was paying a meter rental rather than a minimum price

for gas. This was the conclusion of the parties to the contract and they dealt with each other for upwards of five years on the theory that this was the proper interpretation of the contract. In support of this construction, see *Montgomery Light & Power Co.* v. *Watts*, 26 L. R. A. (N. S.) 1109 (165 Ala. 370, 51 South. 726, 138 Am. St. Rep. 71) ; *Louisville Gas Co.* v. *Dulaney & Alexander*, 36 L. R. A. 125 (100 Ky. 405, 38 S. W. 703).

2. Much argument is indulged in by defendant to the effect that if the legislature has not fixed the rate and there is nothing in the contract forbidding it, that a public utility may fix its own rate. We have no contention with this proposition as our view is that the contract does forbid it.

3. Counsel has also discussed in his brief the question of the reasonableness of the proposed charge, and the reasonableness of permitting a minimum rate, and in support thereof has cited many decisions of public utility commissions. If we were sitting as a public utility commission, and had the power to determine upon the reasonableness of a minimum rate or whether a minimum rate should be charged, the argument and authorities would be most helpful. But such is not the case. We are called upon to construe the terms of a contract which the parties have deliberately made. The question as to whether the proposed charge is a reasonable one, or whether it is reasonable to allow a minimum monthly charge for gas, is not very important on this inquiry.

We are of the opinion that the chancellor reached the right conclusion, and the decree will be affirmed, with costs of both courts to the plaintiff.

OSTRANDER, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.