CITY OF NILES *v.* MICHIGAN GAS & ELECTRIC CO.

1. MUNICIPAL CORPORATIONS—FRANCHISES—VALIDATING STATUTE.
   Statute legalizing prior franchises and contracts of fourth class cities as to supplying gas and electricity to such cities and inhabitants *held,* not to repeal previous statute permitting such cities to contract for the supply of gas and electricity to cities and inhabitants (1 Comp. Laws 1929, §§ 2107, 2218).

2. FRANCHISES—CONTRACTS.
   A franchise is a contract.

3. MUNICIPAL CORPORATIONS—STATUTES—CONTRACTS—GAS—ELECTRICITY.

Statute granting fourth class city power to contract for supplying gas and electricity to city and its inhabitants limits period for which such contract may be made to not exceeding 10 years regardless of how the power may be exercised (1 Comp. Laws 1929, § 2107).

4. SAME—CHARTERS—STATUTES—LEGISLATURE—CONSTITUTION.

Municipalities must find their powers in statute, either directly or by charter authorized by general law, except as the Constitution has specifically divested the legislature of jurisdiction over them.

5. SAME—FRANCHISES—REVOCABILITY—MAXIMUM TERM.

Constitutional provisions that municipality could not acquire a public utility nor grant an irrevocable franchise for one without three-fifths vote of the electors and restricting duration of franchise to not more than 30 years *held*, limitations on power restricting legislature in authorizing a municipality in granting franchises only in the respect of revocability and maximum term (Const. 1908, art. 8, §§ 25, 29).

6. SAME—COMMON COUNCIL—ELECTORS—REVOCABILITY OF FRANCHISES.

Constitutonal provision as to public utility franchises *held*, to effect transfer of power to make franchises irrevocable from common council to electors but still to permit legislature to authorize common council to grant revocable franchises (Const. 1908, art. 8, § 25).

7. SAME—FRANCHISES—ELECTORS.

Popular vote can cure no statutory defects in public utility franchise granted by a municipality (Const. 1908, art. 8, § 25).

8. SAME—FRANCHISES—STATUTES—CONSTITUTIONAL LAW.

Statute authorizing common council of fourth class city to grant franchises for furnishing gas and electricity *held*, not so repugnant as to be repealed by subsequently adopted Constitution limiting maximum term and method of imparting irrevocability to such a franchise (Const. 1908, art. 8, §§ 25, 29; sched. § 1; 1 Comp. Laws 1929, § 2107).

9. SAME—PUBLIC UTILITIES—RATES—DELEGATION OF POWERS.

Primary authority in legislature to fix rates for public utilities may be delegated to municipalities in express terms or by

necessary implication but constitutional provision reserving control of streets and public places to respective municipalities and requiring their consent before use thereof by utility is not such a delegation of power (Const. 1908, art. 8, § 28).

10. Same—Control of Streets—Public Utility Rates—Legislature—Constitutional Law.

Power of control over streets and public places granted by Constitution of 1908, art. 8, § 28, carries with it an authority over public utility rates by municipalities as a condition of the use of such places by the utility and such power in the municipality, whether conferred by Constitution or statute carries with it power to contract for rates at least for a reasonable time; but such power is inoperative when the legislature exercises its reserved governmental power over rates (1 Comp. Laws 1929, § 2107).

11. Same—Implied Powers—Public Utility Rates—Legislature.

A grant of power to municipality to fix rates for a public utility is an exercise of the reserved paramount power of the State by the legislature and supersedes the implied power of a municipality to do so in its reserved control over streets and public places (Const. 1908, art. 8, § 28; 1 Comp. Laws 1929, § 2107).

12. Same—Public Utility Rates—Legislature.

Constitutional provision giving municipality implied power to control public utility rates by reserving to it control of streets and public places would not empower it to make an irrevocable 30-year contract for rates even by vote of the electors, since such contract would be subject to annulment by legislative exercise of the superior power of the State over utility rates (Const. 1908, art. 8, § 28).

13. Same — Public Utility Rates — Statutes — Constitutional Law.

Statute granting control to fourth class city of streets and other public places, insofar as it impliedly permitted contracts as to rates with public utilities, *held*, not repealed by subsequently adopted Constitution granting equally broad power to municipality (Const. 1908, art. 8, § 28; 1 Comp. Laws 1929, § 2107).

14. Same—Statutes—Constitutional Law—Franchises.

Statute authorizing fourth class cities to contract for supplying gas and electricity for period of not to exceed 10 years and

permit utility to use streets and public places superseded cities' implied authority so to do under constitutional provision and constituted a legislative exercise and delegation of reserved governmental power prohibiting such cities from making franchises for such purpose for more than 10 years, thereupon leaving common council free to make new contract for rates at expiration of that time (Const. 1908, art. 8, § 28; 1 Comp. Laws 1929, § 2107).

15. Same—Agent of State in Granting Franchises.

Granting a franchise is an exercise of the sovereign power of the State, vested in the legislature, but delegable to municipalities and, when so delegated, the municipality exercises it as agent of the State and upon the conditions prescribed by law.

16. Constitutional Law — Legislature — Delegated Powers — Municipal Corporations—Franchises.

Constitutional provisions changing method of conferring irrevocability on public utility franchise by municipality and prescribing maximum term thereof, adopted after passage of statute delegating to municipalities power to grant franchises did not withdraw such power to delegate from legislature but merely established limitations on such delegable power to grant franchises (Const. 1908, art. 8, §§ 25, 29; 1 Comp. Laws 1929, § 2107).

17. Municipal Corporations—Constitutional Law—Public Utilities—Rates.

Constitutional provision reserving reasonable control over streets and public places in the several municipalities *held*, not a grant to them of the sovereign power to fix public utility rates (Const. 1908, art. 8, § 28).

18. Same—Delegated Powers—Gas and Electric Rates.

Power delegated to fourth class city by legislature to fix rates for supplying gas and electricity therein which confined power to contract therefor to 10 years was an exercise by the legislature of the sovereign power of the State to fix such rates and city, as an agent, cannot enlarge its authority by incorporation of a 30-year contract in franchise granted utility for use of its streets (Const. 1908, art. 8, §§ 25, 28, 29; 1 Comp. Laws 1929, § 2107).

19. Same—Authority.

A city cannot exceed its charter powers and confer prohibited authority upon itself by a particular method of usurpation.

20. Same—Gas Rates—Contracts—Ultra Vires.

Unless an instrument between a fourth class city and utility, purporting to fix rates for supplying gas to city and its inhabitants for period of 30 years is binding on the legislature it is merely a private contract, not a franchise, and, as a private contract, is wholly *ultra vires* beyond 10-year period because prohibited by superior legislative authority (1 Comp. Laws 1929, § 2107).

21. Same—Fourth Class Cities—Common Council—Electors.

Fourth class city common council and electors each · exercise part or whole of municipal powers when, and only when, it is so provided by law and each has only such powers as are so confererd.

22. Same—Franchises—Gas Rates—Common Council.

Ordinance granting utility a franchise to manufacture and sell gas to fourth class city and its inhabitants and use streets and public places therefor and purporting to fix rates for period of 30 years, which was approved by electors *held*, not to fix rates beyond 10-year period allowed by · statute and, thereafter, common council has authority to contract for change of rates (1 Comp. Laws 1929, § 2107).

Potter, C. J., and North, J., dissenting.

Appeal from Berrien; Collingwood (Charles B.), J., presiding. Submitted April 11, 1935. (Docket No. 96, Calendar No. 38,267.) Decided October 30, 1935. Rehearing denied December 10, 1935.

Bill by City of Niles, a municipal corporation, against Michigan Gas & Electric Company, a corporation, to declare certain gas rates valid, enjoin charge of greater amount and for other relief. Decree for plaintiff. Defendant appeals. Reversed, and bill dismissed.

*Casper R. Grathwohl,* for plaintiff.

*Burns & Hadsell* and *Sherman T. Handy (Ralph D. Stevenson,* of counsel), for defendant.

FEAD, J. April 7, 1913, the city of Niles adopted an ordinance granting a 30-year franchise to Niles Gas Light Company, assignor of defendant, to manufacture and sell gas to the city and its inhabitants and to use streets and public grounds generally therefor. The ordinance was approved by vote of the electors. Section 6 provides:

"Said company, its successors, lessees or assigns may charge for manufactured gas sold and distributed in said city the sum of one dollar per thousand cubic feet during the life of this ordinance."

The franchise was formally accepted by the Light Company.

April 8, 1918, and again on August 31, 1920, the city council adopted an ordinance authorizing increase in the price which could be charged for gas. August 8, 1932, the council adopted a resolution authorizing a sliding price scale for gas, partly in excess of one dollar per thousand feet. The ordinances contained reference to the original ordinance of 1913, but the resolution did not. Neither ordinance nor the resolution was submitted to popular vote.

This action is brought by the city to set aside as illegal the subsequent ordinances and resolution, to restore the rate in the original ordinance of 1913, and enjoin the defendant from discontinuing service on refusal to pay a greater rate. Plaintiff had decree.

Niles is a city of the fourth class. When the original franchise was granted, Act No. 215, Pub. Acts 1895 the fourth class cities act, was in force. It provides, 1 Comp. Laws 1929, § 2107:

"SEC. 8. The council may contract from year to year or for a period of time not exceeding ten years with any person or persons, or with any duly authorized corporation, for the supplying of such city or

the inhabitants thereof, or both, with gas, electric or other lights upon such terms and conditions as may be agreed; and may grant to such person, persons or corporation the right to the use of the streets, alleys, wharves and public grounds of such city as shall be necessary to enable such person, persons or corporation to construct and operate proper works for the supplying of such light upon such terms and conditions as shall be specified in such contract."

Defendant contends the rate provision of the ordinance of 1913 became ineffective at the end of 10 years, if it was not void *ab initio,* because it was in contravention of the statute, and the council had power to newly contract as to rates thereafter.

Plaintiff contends that the statute (1 Comp. Laws 1929, § 2107), was repealed by Act No. 259, Pub. Acts 1905 (1 Comp. Laws 1929, § 2218). The latter, however, was purely a validating act legalizing prior franchises and contracts and had no other effect upon Act No. 215, Pub. Acts 1895.

Plaintiff also contends the statute did not apply to franchises or, if it did, it was repealed by the Constitution of 1908, which provides in article 8:

"Nor shall any city or village acquire any public utility or grant any public utility franchise which is not subject to revocation at the will of the city or village, unless such proposition shall have first received the affirmative vote of three-fifths of the electors of such city or village voting thereon at a regular or special municipal election; and upon such proposition women taxpayers having the qualifications of male electors shall be entitled to vote." Section 25.

"The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships." Section 28.

"No franchise or license shall be granted by any municipality of this State for a longer period than thirty years." Section 29.

A franchise is a contract. *Village of Otsego* v. *Allegan County Gas Co.*, 203 Mich. 283. The statute makes no distinction between franchises and other forms of contract in establishing the 10-year limit of time. It restricts the power to contract, whatever the form of its exercise.

Except in certain specific respects, the Constitution of 1908 did not divest the legislature of jurisdiction over municipalities and they still must find their powers in statute, either directly or by charter authorized by general law. *City of Kalamazoo* v. *Titus*, 208 Mich. 252, 265; 2 Constitutional Debates, p. 1432. Having no home rule charter, Niles is governed by the statute. Act No. 215, Pub. Acts 1895.

The words in sections 25 and 29 of article 8 of the Constitution are words of limitation, not of grant of power. They restrict both the legislature in authorizing, and the municipality in granting, franchises but only in the respect of the maximum term of the franchise and its revocability.

Section 25 does not vest power to grant franchises in the electors. It has the definite purpose and effect of transferring to the electors a power over franchises which was theretofore exercised by the common council. Prior to 1908 the common council, under authority of statute or charter, could and did grant irrevocable franchises without popular vote. Section 25 withdrew from the legislature and council the power to give irrevocability to franchises and vested it in the people. The legislature still may authorize the common council to grant a franchise. Such franchise will be valid but revocable at will of the municipality unless approved by popular vote.

The people therefore add nothing to it except the element of irrevocability.  The constitutional convention so intended and understood the effect of section 25.  2 Constitutional Debates, p. 1325 *et seq.,* Address, p. 1432.  Consequently, popular vote can cure no statutory defects in the franchise itself.

The Constitution, schedule, § 1, provides that statutes not repugnant to the Constitution should remain in force until they are altered, repealed or expire by their own limitations.  Sections 25 and 29 leave 1 Comp. Laws 1929, § 2107, undisturbed except by adding a condition as to limit of the franchise and method of imparting irrevocability to it.  We find no repugnancy working repeal.

Power of control over streets, alleys and public places, granted by Constitution, art. 8, § 28, carries with it an authority over public utility rates by municipalities, as a condition of the use of streets, alleys and public places by the utility.  But the nature of the power must be appreciated in considering its effect to repeal section 2107.

Primarily the authority to fix rates for public utilities is a governmental power vested in the legislature.  The legislature may delegate it to municipalities but only in express terms or by necessary implication.  Section 28 does not delegate such power to cities and villages.  *City of Kalamazoo* v. *Kalamazoo Circuit Judge,* 200 Mich. 146, 161.

The authority of municipalities over rates, resulting from section 28, is a wholly different power.  From the fact of control of streets, whether under statute or Constitution, there arises an implied power to fix reasonable rates as a condition of the use of the streets.  This, in turn, carries the power to contract for rates, at least for a reasonable time.  *Boerth* v. *Detroit City Gas Co.,* 152 Mich. 654 (18

L. R. A. [N. S.] 1197); *Lenawee County Gas & Electric Co.* v. *City of Adrian*, 209 Mich. 52 (10 A. L. R. 1328); *City of Saginaw* v. *Consumers' Power Co.*, 213 Mich. 460; *Village of Otsego* v. *Allegan County Gas Co., supra.* Such implied power of municipality to fix or contract for rates is inoperative when the legislature exercises its reserved governmental power over them. *City of Traverse City* v. *Citizens' Telephone Co.*, 195 Mich. 373. A grant of power to the municipality to fix rates is an exercise of the reserved paramount power of the State by the legislature. *Village of Plainwell* v. *Eesley Light & Power Co.*, 214 Mich. 461, and supersedes the implied power.

Under its powers implied from section 28, then, the city, if there were no statute, could not make an irrevocable 30-year contract for rates even by vote of the electors. Such contract would be subject to annulment by legislative exercise of the superior power.

The municipal control of streets and other public places under the statute, 1 Comp. Laws 1929, § 2107, was, as to the matter before us, as broad as that granted by section 28 of article 8 of the Constitution. The implied power to fix or contract for rates under the one was not different from that under the other. There was no conflict between them which resulted in a repeal of the statute.

Section 2107 was a legislative exercise and delegation of reserved governmental power to contract for rates and defined the conditions under which the municipality could use the delegated power. It superseded the implied authority and limited the jurisdiction of the municipality to contract. No irrevocable contract for rates, by franchise or otherwise, could have been made for more than 10 years.

Consequently at the expiration of that period the common council had power to make new contract for rates.

We have no decisions of our court in direct point. However, the limitation of 10 years has been recognized by municipalities in the drafting of franchises and was before the court in *City of Saginaw* v. *Consumers' Power Co., supra; Village of Plainwell* v. *Eesley Light & Power Co., supra.*

I cannot concur in the reasoning of Mr. Justice North's opinion, presented after the above was written. It treats an express constitutional *limitation* of power as an express constitutional *grant* of power. Reference to other provisions of the Constitution demonstrates the ability and intention of the framers to express grants of power in apt affirmative language; and there is no justification for a construction that, concealed in express prohibitory words denying power, they intended to grant it.

The grant of a franchise is an exercise of the sovereign power of the State, vested in the legislature. The power may be delegated to municipalities but, when so delegated, the municipality exercises it as agent of the State and upon the conditions prescribed by law. 26 C. J. pp. 1013, 1024 *et seq.*; 12 R. C. L. p. 186. Sections 25 and 29 do not purport to withdraw from the legislature its sovereign power over franchises and confer it upon municipalities. They do no more than establish limits of time and conditions of irrevocability of such franchises as the legislature may delegate to municipalities the power to grant.

Nor, under the cases above cited, particularly *City of Kalamazoo* v. *Kalamazoo Circuit Judge, supra,* cited by Mr. Justice North, does section 28 grant to

municipalities the sovereign power to fix public utility rates. Section 2107 was an exercise by the legislature of such sovereign power, delegated to fourth class cities but confined to the power to contract for 10 years and no longer. The contract may be, but need not be, attached to a franchise. Its inclusion in a franchise cannot enlarge the delegated authority. A city cannot exceed its charter powers and confer prohibited authority upon itself by a particular method of usurpation.

Moreover, unless the cited cases dealing with section 28 be overruled, Mr. Justice NORTH's opinion would result in the anomalous situation that the contract rates are binding on the city and the utility for the full 30 years but are not binding on the legislature beyond the 10-year period authorized by it. But this is hardly tenable because, unless binding on the legislature, the instrument is merely a private contract, not a franchise. If it is merely a private contract between the city and the utility, it is wholly *ultra vires* beyond the 10-year period because prohibited by the superior legislative authority.

An attempt to differentiate between the common council and the council and the electors, as constituting a city or village, in finding municipal powers is futile. Each exercises part or the whole of the municipal powers when, and only when, it is so provided by law. Each has only such powers as are so conferred. Under 1 Comp. Laws 1929, § 1902, governing fourth class cities:

"The legislative authority of cities incorporated under this act shall be vested in a council consisting of the mayor, two aldermen elected from each ward and the city clerk."

In section 2107 the whole of the municipal power to contract for gas rates was vested in the council.

To avoid misunderstanding, we hold only that the rates provided in the franchise ordinance of 1913 were not fixed beyond the 10-year period allowed by statute, and that the common council of plaintiff city had authority thereafter to contract for a change of rates. Possible rights and remedies resulting from the ruling must be left to further consideration.

Decree reversed and bill dismissed, with costs.

Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred with Fead, J.

North, J. (*dissenting*). Niles, Michigan, is a fourth class city organized under Act No. 215, Pub. Acts 1895, as amended (1 Comp. Laws 1929, §§ 1796–2217). In 1913 an ordinance was adopted by the city council and properly approved by the electors granting a gas franchise to the Niles Gas Light Company, its successors and assigns. The franchise was duly accepted by the company and is now held by its successor, Michigan Gas & Electric Company, defendant herein. Section six of the franchise provides that the company, its successors, lessees or assigns shall furnish gas in the city at a maximum rate of one dollar per thousand cubic feet ''during the life of this ordinance.'' A discount for prompt payment is specified in the ordinance. For substantially five years the corporation operated under the franchise as granted. But in 1918, 1920, 1929 and 1932 respectively, action was taken by the city council by which it was attempted to authorize a charge in excess of one dollar per thousand cubic feet for gas furnished by the holder of the franchise. None of these actions taken by the city council were submitted for ratification to the municipal electors; but gas was furnished at the respective increased prices. This suit was instituted by the city to have declared

as invalid the action of the city council purporting to authorize the increased charge for gas, and to enjoin the defendant from discontinuing service upon refusal to pay the increased rate. A decree was entered granting plaintiff the relief sought and defendant has appealed.

Decision herein turns upon whether the provision in the franchise for furnishing gas at a maximum rate of one dollar per thousand cubic feet is a provision which is valid and binding throughout the 30-year period for which this franchise was granted. It is defendant's contention that if this limitation of one dollar per thousand cubic feet is or ever was valid at all it was not binding upon the corporation for more than 10 years from the date the franchise was granted. In making this contention defendant relies upon Act No. 215, chap. 27, § 8, Pub. Acts 1895 (1 Comp. Laws 1929, § 2107), which provides:

"Sec. 8. The *council* may contract from year to year or for a period of time not exceeding ten years with any person or persons, or with any duly authorized corporation, for the supplying of such city or the inhabitants thereof, or both, with gas, electric or other lights upon such terms and conditions as may be agreed; and may grant to such person, persons or corporation the right to the use of the streets, alleys, wharves and public grounds of such city as shall be necessary to enable such person, persons or corporation to construct and operate proper works for the supplying of such light upon such terms and conditions as shall be specified in such contract."

For reasons hereinafter stated, we think the quoted statute is not at all applicable to the instant case. At the outset it should be noted that the limitation of power to contract is a limitation upon "the *council*." It in no way limits the power of the

municipality to contract when acting in a manner provided by law.

Therefore we must determine whether at the time this franchise was granted (1913) the municipality of Niles had the power by taking proper action to enter into a valid franchise contract of this character by which the contracting parties would be bound for a period of more than 10 years, to-wit: 30 years. We think the Constitution of 1908 did vest the municipality (not the city council) with such power. Prior to 1908 the common council, either by reason of statutory or charter authority, could and did grant irrevocable franchises without the ratification of the municipal electors. But this power was abrogated by the Constitution of 1908. Article 8 of the Constitution has to do with "Local Government." We quote:

"SEC. 25. Nor shall any city or village * * * grant any public utility franchise which is not subject to revocation at the will of the city or village, unless such proposition shall have first received the affirmative vote of three-fifths of the electors of such city or village voting thereon."

"SEC. 28. No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks or conduits, without the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

From these provisions of the Constitution which were in force at the time this franchise was granted it is too plain for argument that a franchise of this character could then and can now be obtained only from the municipality in which the rights thereunder are to be exercised. And further it is settled law in this State that the constitutional provision above quoted reserving to municipalities the reasonable control of their streets confers upon such municipalities authority to fix reasonable rates to be charged for services to be rendered by a public utility seeking a franchise which grants the right to use such streets, alleys or public places. *City of Kalamazoo* v. *Kalamazoo Circuit Judge,* 200 Mich. 146.

Since municipalities are vested with the above-noted powers incident to making franchise contracts, the legislature may not restrict the exercise of such powers, except to the extent that limitations are found in the Constitution itself. And further, if at the time of the adoption of our present Constitution any statutory enactment contained such a limitation, it became inoperative upon the adoption of the Constitution. The Constitution, schedule, § 1, provides that the statute laws in force at the time the Constitution was adopted, but "not repugnant to this Constitution," shall remain in force until they expire by their own limitations, or are altered or repealed. And on the contrary, subject to certain limitations with which we are not here concerned, it follows by necessary implication that any statutory provision then existing which contravened a provision of our present Constitution became inoperative when the Constitution was adopted, unless otherwise expressly provided therein. However, we do not hold that the statutory limitation of 10 years

was rendered inoperative by the subsequently
adopted constitutional provisions; but instead that
the statutory limitation applies only to the "coun-
cil" and not to the municipality when its action is in
accord with the Constitution and applicable valid
legislative enactments.

The only limitation found in the Constitution upon
the powers "reserved" to the various municipalities
and those with which we are now concerned is the
following portion of article 8.

"Sec. 29. No franchise or license shall be granted
by any municipality of this State for a longer period
than thirty years."

Here again it is worthy of note that the consti-
tutional limitation is one upon the power of the
"municipality," rather than a limitation (as ap-
plied to this case) upon the power of the city coun-
cil only. It is difficult to understand why the
framers of our Constitution placed the limit of 30
years upon the power of a "municipality" to grant
a franchise, if the limitation of 10 years provided in
Act No. 215, chap. 27, § 8, Pub. Acts 1895, above
noted, applied to the "municipality," rather than
to the "council," as expressly worded in the act it-
self. Sections 28 and 29 of article 8 of the Consti-
tution should be read together; and when so read
the constitutional limitation of 30 years is applicable
to the franchise rights which municipalities are au-
thorized to grant under section 28. Thus by neces-
sary implication, if not in express terms, the Consti-
tution has vested in or reserved to the municipalities
the power to grant franchises for a maximum period
of 30 years. This power cannot be minimized by the
legislature. And, if ratified by a three-fifths vote of
the electors (Const. 1908, art. 8, § 25), a franchise,

the terms of which do not provide otherwise, is irrevocable.

A franchise is a contract. *Village of Otsego* v. *Allegan County Gas Co.*, 203 Mich. 283. It is proper to embody therein a provision for a reasonable rate to be paid for the services to be rendered by the public utility accepting the franchise. *City of Kalamazoo* v. *Kalamazoo Circuit Judge, supra,* in which the following is approvingly quoted:

" 'The city had the unquestionable right to grant to any person, firm or corporation a franchise to occupy its streets and alleys for conveyance of gas to customers. But it was under no compulsion to convey such right to any one. The subject of grant rested in contract like any other matter. As the price of the right the city was at perfect liberty to demand that the charges for gas furnished the city and its inhabitants should not exceed certain prices. The appellee was at perfect liberty to reject or accept the city's proposal. The terms proposed on the one hand and accepted on the other made a contract as valid and enforceable as if made by two individuals,' *City of Noblesville* v. *Noblesville Gas & Improvement Co.*, 157 Ind. 162, 169 (60 N. E. 1032).

" 'We see no reason why a town may not make a contract to accomplish a function with which it is charged or empowered, binding it and the other party. He, accepting, is plainly bound, and cannot say the town's act is void.' *St. Mary's* v. *Hope Gas Co.*, 71 W. Va. 76 (76 S. E. 841, 43 L. R. A. [N. S.] 994)."

In our opinion in the *Kalamazoo Case* we stated:

"It seems, therefore, clearly admissible, under the language of the Constitution here under consideration, that the municipalities of the State having 'reasonable control of their streets,' may affix reasonable conditions for their use by public utilities,

and that, among such reasonable conditions, is the fixing of a reasonable rate.''

If the framers of our Constitution had any thought of withholding from a municipal corporation the power to include in a franchise, which it might grant for a period in excess of 10 years, a maximum limit of price or rate to be charged during the franchise period for the services to be rendered, it is astounding that they did not expressly so provide. It is difficult to conclude that the members of the constitutional convention intended that municipalities might enter into 30-year franchise contracts with public utilities but that such municipalities should not have the power to embody in such contracts the element which would be of primary importance to the citizens of the municipality, namely, the maximum rate or price to be paid for the service.

Neither party to this appeal is asserting that the franchise is a nullity, wholly void. But appellant seeks to segregate the one provision by which the rate of service is fixed and to have this particular provision held invalid, while all the rest remain in force. Unless the parties are held bound by each and every provision of this franchise, it would seem reasonably certain that the electors whose votes ratified the franchise had been misled into voting to accept something which they could not lawfully obtain, namely, to have gas furnished ''during the life of this ordinance'' at a maximum of one dollar per thousand cubic feet.

To hold in accord with appellant's contention is to say that the cities of this State are powerless to enter into an irrevocable franchise for a period of more than 10 years which franchise contains a valid provision fixing a maximum rate at which the public utility is to provide the service specified in such

franchise. Such a holding would seem to be in glaring conflict with the quoted provisions of the Constitution which clearly provide that an irrevocable franchise for not more than 30 years may be granted by a city provided it is approved by a three-fifths vote of the municipal electors. If the franchise contract is valid, we are not and cannot be concerned with whether its terms are favorable to one party or the other.

"It is possible for a State to authorize a municipal corporation by agreement to establish public service rates and thereby to suspend for a term of years not grossly excessive the exertion of governmental power by legislative action to fix just compensation to be paid for service furnished by public utilities. *Detroit* v. *Railway Co.*, 184 U. S. 368, 382 (22 Sup. Ct. 410). *Vicksburg* v. *Vicksburg Water Works Co.*, 206 U. S. 496, 508, 515 (27 Sup. Ct. 762). *St. Cloud Public Service Co.* v. *City of St. Cloud*, 265 U. S. 352, 355 (44 Sup. Ct. 492). And where a city, empowered by the State so to do, makes a contract with a public utility fixing the amounts to be paid for its service, the latter may not be required to serve for less even if the specified rates are unreasonably high. *Detroit* v. *Railway Co., supra*, 389. And, in such case, the courts may not relieve the utility from its obligation to serve at the agreed rates however inadequate they may prove to be. *St. Cloud Public Service Co.* v. *City of St. Cloud, supra.*" *Railroad Commission of California* v. *Railway Corp.*, 280 U. S. 145, 151 (50 Sup. Ct. 71).

Decision herein is in no way affected by ordinances or resolutions of the common council of Niles not approved by the municipal electors and under the assumed authority of which the defendant or its predecessor has received for its service a rate in excess of that provided in its franchise. *Stetson* v.

*City of Seattle,* 74 Wash. 606 (134 Pac. 494). Nor does the public utilities commission have power during the life of this franchise contract to fix a new rate in excess of the maximum rate at which defendant has undertaken to furnish gas to the plaintiff city and its citizens.

"In no case shall the commission have power to change or alter the rates or charges fixed in, or regulated by any franchise or agreement heretofore or hereafter granted or made by any city, village or township." 2 Comp. Laws 1929, § 11009, as amended by Act No. 138, Pub. Acts 1931.

Appellant's contention herein presented cannot be sustained. The rights of the parties to this suit are fixed by the terms of the franchise contract, and the city's rights thereunder should be held to be enforceable. Such was the decree entered in the circuit court and it should be affirmed on this appeal, with costs to appellee.

POTTER, C. J., concurred with NORTH, J.

The late Justice NELSON SHARPE took no part in this decision.