## CONSUMERS POWER CO. v. KRAUSE et al.

### No. 7212.

Circuit Court of Appeals, Sixth Circuit.
April 7, 1937.

566

Bernard J. Onen, of Battle Creek, Mich. (Walter D. Kline, of Jackson, Mich., Weadock & Weadock, of Saginaw, Mich., and Stuart H. Redner, of Battle Creek, Mich., on the brief), for appellant.

F. Roland Sargent and George C. Ryan, both of Saginaw, Mich., for appellees.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

On December 21, 1908, the common council of the city of Saginaw, Mich., by an ordinance, No. 120, granted a thirty-year franchise to the Saginaw City Gas Company, predecessor of appellant, Consumers Power Company (herein called the Company), "to sell and supply gas to the city of Saginaw and the inhabitants thereof. * * *"

Section 2 of the original ordinance fixed the rates at $1.15 per thousand cubic feet until June 1, 1911, and for the next ten years at $1.10 per thousand cubic feet. It was amended in 1920 to provide that the rate from June 1, 1920, to June 1, 1921, should be $1.40 per thousand cubic feet. It was further provided that after 1921 at the request of either party a committee of five disinterested persons, two each to be appointed by the council and the Company and the fifth by the four, should be set up to hold hearings and fix the rates to be paid for the ten-year period beginning on that date; and that for the remaining term of the franchise the rates might again be fixed by a similarly constituted arbitration board.

There was a further provision that the company should allow a discount of 20 cents per thousand cubic feet from the fixed rates upon payment being made during the first twenty days of the month following that in which the gas was used. Further, the grantee at its own option might charge less than the fixed rates where in its judgment such reduction was justified.

Section 4 of the franchise provided that the coal gas furnished thereunder should not be less than 570 B. t. u.; that the water gas furnished should not be less than 570 B. t. u., and that when mixed coal and water gas was supplied it should not be less

than 570 B. t. u. B. t. u. is the abbreviation for British thermal unit, being the amount of heat required to raise the temperature of one pound of water one degree Fahrenheit.

Pursuant to the terms of the ordinance, the rates were adjusted by arbitration in 1921 and again in 1932. The 1932 award was made as of June 1, 1931, and was to continue "during the remaining period of the life of said franchise ordinance, to wit; until December 31, 1938. * * *"

All rates so far were for coal gas. In 1932 the arbitration board found "that there has not been established a proven field of natural gas sufficient to justify its present consideration as an element hereunder. * * * Therefore, it is hereby declared that the gas rates or price fixed by this board are based upon and confined to the manufacture and sale of artificial gas only, and without prejudice to the effect of any future development in the natural gas field."

The rates fixed by the 1932 award were in effect until September, 1933. But in the meantime there was a rapid development in the natural gas fields in Michigan, and on May 16, 1933, appellant made a written proposal to the council "to suspend existing manufactured gas rates for such period as an adequate supply of natural gas is available, and to serve Saginaw with natural gas under a new rate schedule substantially reducing the cost of service to the customer." The proposition set out the rates for various classes of service. It contained the statement that "service under this agreement will start with gas of 780 B. t. u. and as soon as facilities are completed, natural gas with an approximate heating value of 1000 B. t. u. will be furnished. The customer will enjoy the full price reduction from the time the service of 780 B. t. u. gas is started." On June 27, 1933, the council accepted the proposal upon condition that it continue in effect until December 21, 1935, only. Appellant approved this change and the new rates went into effect in September.

Dissatisfaction arose over the new agreement because as a matter of practical application the rates thereunder, especially the "domestic and general rate," were higher than those of the 1932 award, and the discount for prompt payment provided for in the original ordinance was less. The table of rates as set forth in the contract are not readily comparable to those in the 1932 award, but appellees have prepared a table in their main brief from which a comparison can be made.[1]

Prior to the new contract, the discount under the original franchise and the 1932 arbitration was 20 cents per thousand cubic feet; whereas under the new contract the discount was the difference between the net and gross rates, which, taking 1,000 cubic feet as an illustration, would result in an advantage to the Company of 19 cents per thousand cubic feet.

This suit was brought on September 19, 1933, in an appropriate state court by appellees Krause, Parent, and LaLonde, users of the Company's gas services and as taxpayers and residents of Saginaw individually and in behalf of the people of Saginaw, to enjoin the collection of the new rates. The city of Saginaw was joined as a party defendant and on October 3, 1933, the Company removed the cause to the District Court. The city filed its answer on October 10, 1933, denying that the council was unwarranted in making the contract for natural gas or that it violated the franchise ordinance. The Company answered, maintaining that under the franchise it was authorized to furnish natural gas within the city of Saginaw, but that rates for such service had never been fixed and that under the circumstances the city was duly empowered to contract for natural gas rates and that the contract was valid until its termination on December 21, 1935.

In July, 1934, during the pendency of the suit, the city took a different position. Its council adopted a resolution which undertook to revoke ordinance No. 120 and to declare forfeited all rights, benefits, and privileges conferred thereby, upon the ground that the Company had failed to comply with section 4 thereof, in that it had failed to furnish the requisite quality and quantity of gas at the prices fixed by and under the ordinance.

The court found that the franchise ordinance No. 120 had not been revoked or forfeited by the council's resolution of

| 1 | 1932 Award Net | Contract Net | Rate Gross |
|---|---|---|---|
| 500 cu. ft. or less | .75 | 1.05 | 1.07 |
| 600 " " | .85 | 1.20 | 1.23 |
| 700 " " | .95 | 1.35 | 1.39 |
| 800 " " | 1.05 | 1.50 | 1.55 |
| 900 " " | 1.15 | 1.65 | 1.71 |
| 1000 " " | 1.25 | 1.80 | 1.87 |

July 12, 1934, declaring it so. This finding was undoubtedly correct. A forfeiture is not favored in equity and may be waived and the city may not be heard to insist upon it after it, through its council, had on June 27, 1933, joined in the suspension of certain of its terms and the substitution of new rate schedules. Nor did this resolution "revoke" the ordinance. To revoke is to repeal and such a franchise may not be repealed by a simple resolution. City of Saginaw v. Consumers' Power Co., 213 Mich. 460, 469, 182 N.W. 146. So far, all parties seem to have acquiesced in the findings of the court.

■ The court found that the contract of June 28, 1933, was an attempt to amend the franchise ordinance and was not, as urged by appellant, merely supplemental to it. We concur in this view. The franchise was granted under certain restrictions and conditions as to prices, discount, and gas content. It provided for an arbitration procedure by which, at specified intervals, prices could be adjusted. The last award running until the termination of the franchise had been made in 1932. In this respect the case differs from the City of Saginaw v. Consumers' Power Co., supra, wherein the franchise gave the power company the right of its own volition, under certain conditions, to fix light and power rates from time to time. It seems clear enough that any attempt to adjust prices after the last award provided for under the franchise would require an amendment to the franchise.

The effect of the contract was to annul the arbitration award; and to substitute higher rate schedules and a lower discount rate, both of which were highly advantageous to the Company and correspondingly disadvantageous to consumers. This was a radical departure from the terms of the franchise and could be accomplished only in accordance with section 31 (f) of the charter of the city, to wit,

"No ordinance or section thereof shall be revised or amended, except by ordinance adopted in the manner provided in this charter, which new ordinance shall contain the entire ordinance or section as amended and shall repeal the ordinance or section so amended. * * *"

See City of Saginaw v. Consumers' Power Co., supra.

■ Moreover, the court found that the contract was void because it was never assented to by the electors of the city. This contested finding involves a consideration of the following clause of section 25, article 8, of the Michigan Constitution, to wit:

"Nor shall any city * * * grant any public utility franchise which is not subject to revocation at the will of the city or village, unless such proposition shall have first received the affirmative vote of three-fifths of the electors of such city * * * voting thereon at a regular or special municipal election."

The Constitution was adopted on January 1, 1909, ten days after the enactment of the franchise ordinance No. 120, and more than twenty-three years before the execution of the contract which was never referred to the electorate. As indicated, the contract of 1933 granted the Company special and peculiar privileges and emoluments which it had not before enjoyed and it was not, upon its face or otherwise, made subject to revocation at the will of the city or the council until December ·21, 1935. We think therefore that it was inhibited by the constitutional provision. It is true that the contract carries the declaration that it "shall not be deemed to constitute a franchise * * *", but this in no wise minimizes the actual effect of it.

■ Appellant contends that this conclusion disregards the decision in City of Niles v. Michigan Gas & Electric Co., 273 Mich. 255, 262 N.W. 900. We think the Niles Case is inapplicable. The city of Niles was a city of the fourth class and acting under Act No. 215, c. 28, Pub.Acts 1895, in force at the time the Constitution became effective, wherein the city council was empowered to contract for lights, gas, etc., for a period of not exceeding ten years. The court ruled that the constitutional provision did not limit statutes already in force at the time of its adoption and that the council could therefore contract for rates. Here the city of Saginaw was operating under a charter adopted by the electors on November 15, 1913, under the Home Rule Act effective September 1, 1909, Pub.Acts 1909, No. 279, chapter 49, Mich.Comp.Laws 1929 (section 2228 et seq.). In the exercise of its right under that charter (article 1, § 4, subd. 24) "to fix and determine from time to time, the rates or compensation to be collected by any person, firm or corporation for * * * gas * * * and to prescribe the character and quality of any public utility service"

is necessarily limited by the provisions of the Constitution above quoted.

Following the finding that the original franchise was still in force, the court enjoined appellant from charging rates in excess of those established by the last arbitration award. It is urged that the effect was to fix rates for natural gas until the expiration of the franchise and that the injunction was void because the court had no rate-making power.

We do not so construe the decree. It fixed no rate for natural gas. It simply protected the rights of appellees in the last arbitration award made pursuant to the franchise. It is conceded that under the franchise appellant could have furnished natural gas. See City of Laurel v. Miss. Gas Co., 49 F.(2d) 219 (C.C.A.5); Central Power Co. v. City of Hastings, 52 F.(2d) 487, 493 (D.C.). The fact that it did so did not affect the rates fixed by the last award, which were final under the franchise. See Traverse City v. Telephone Co., 195 Mich. 373, 389, 161 N.W. 983. Appellant was warned of this in the award itself. It may or may not be true that the substitution of natural gas created a situation wherein one or both parties to the franchise might reasonably and justly seek a revision of the rate schedules by some suitable and appropriate proceeding, but until such change is lawfully authorized the parties are bound.

The decree of the District Court is affirmed.