RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0064p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JOHN T. EASTMAN,
            *Plaintiff-Appellant,*

            *v.*

MARINE MECHANICAL CORPORATION,
            *Defendant-Appellee.*

> No. 03-4591

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-01314—Donald C. Nugent, District Judge.

Argued: June 7, 2005

Decided and Filed: February 15, 2006

Before: SILER and GIBBONS, Circuit Judges; LAWSON, District Judge.[*]

_____

### COUNSEL

**ARGUED:** Steven D. Bell, SIMON LAW FIRM, Cleveland, Ohio, for Appellant. Michael N. Chesney, FRANTZ WARD, Cleveland, Ohio, for Appellee. **ON BRIEF:** Steven D. Bell, Ann-Marie Ahern, SIMON LAW FIRM, Cleveland, Ohio, for Appellant. Michael N. Chesney, Thomas Merritt Bumpass, Jr., FRANTZ WARD, Cleveland, Ohio, for Appellee.

_____

### OPINION

_____

DAVID M. LAWSON, District Judge. Plaintiff John Eastman appeals from the decision of the district court granting the defendant's motion for summary judgment on an Ohio common-law claim of retaliatory employment discharge in violation of public policy. The complaint, originally filed in an Ohio state court, identified federal law as the source of the public policy violated by the defendant, and it was on that basis that the defendant claimed in its removal notice that the case "[arose] under the Constitution, treaties or laws of the United States," 28 U.S.C. §§ 1331, 1441(b), and thus was "removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). We hold, however, that the plaintiff's state-law employment claim alleging wrongful discharge in violation of federal public policy does not raise a substantial federal question over which federal courts may exercise original or removal jurisdiction, because accepting such cases

_____

[*] The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

would be "[in]consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. __, 125 S. Ct. 2363, 2367 (2005). Because we find that the district court did not have subject matter jurisdiction to adjudicate the claim, we will vacate the district court's judgment and remand with instructions to remand the matter to the state court whence it came.

I.

John T. Eastman, a resident of Ohio, began his employment with TRW, Inc., a corporate predecessor of the defendant, in 1984. He was trained in metallurgy at Case Western Reserve University, and he began in a position as a metallurgical engineer. The defendant, Marine Mechanical Corporation, manufactures component parts for nuclear reactors used on vessels of the United States Navy. It is an Ohio corporation.

Marine Mechanical's supply contract with the Navy's prime contractor calls for a demanding quality assurance program because the parts face exposure to extreme temperature, pressure, and irradiating conditions and must conform to the Navy's maintenance requirements. All employees must read and sign acknowledgments that they will adhere to Marine Mechanical's quality assurance program by reporting any contractual violations. Marine Mechanical emphasizes its expectations for employee adherence to this obligation in a procedure manual that specifically provides that employees must "bring possible violations of this policy" to a supervisor or officer of the company. J.A. at 198.

Over the last ten years of his employment, Eastman received high performance ratings and significant pay increases from the defendant each year. The defendant praised Eastman in a performance appraisal issued eight months before termination. Eastman advanced to the position of Manager of the Materials Engineering Section.

Eastman alleges, however, that he became a victim of a shift in his employer's business focus because of his steadfast adherence to quality control requirements, while the company turned its priorities toward production schedules and profitability at the expense of quality. On November 3, 2000, he claims Marine Mechanical's president demoted him from Manager of Materials Engineering to Principal Engineer after being informed that the company "wanted to be doing things faster." Eastman claims that the demotion was precipitated by his refusal to test a part in a way he believed would produce inaccurate results. Marine Mechanical contends the title change resulted from a new organizational structure but acknowledges that the change put Eastman under the supervision of Mark Centa, who previously had worked in a position subservient to Eastman.

On February 9, 2001, Eastman in his new position submitted a written memorandum notifying Marine Mechanical supervisors of quality control deficiencies, which included warnings that a certain process possibly violated Marine Mechanical's contractual obligations, the purchase of substandard fasteners used in products, and the receipt of certain component parts after a vendor inaccurately tested their hardness strength. Marine Mechanical conducted an investigation and concluded that Eastman's notification made unfounded allegations of fraud against Centa, Eastman's supervisor. On February 23, 2001, Eastman submitted a revised memorandum to clarify some unsupported statements made in the earlier memorandum. Marine Mechanical contended that the memoranda only identified problems that caused delay and cost increases and personally attacked Centa. It chastised Eastman with a written "Disciplinary Warning" on February 27, 2001.

Eastman continued in his position as Principal Engineer and regularly raised issues related to product quality as part of his normal duties. He alleges that the company became resistant to his quality control efforts. On July 23, 2001, Eastman submitted a letter responding to the earlier

disciplinary warning and raising new product quality issues. The new letter alleged that others in the company had misrepresented some vendor requirements, failed to ensure accurate testing of a piece of wire, and used an uncertified welder to complete some work. Marine Mechanical says that it thoroughly investigated the allegations, concluded that the quality issues had been identified to the company's customer, and found no evidence of intentional misrepresentations made by employees. Although Eastman insists that his letter represented his attempt to comply with the stated company policies of identifying possible violations of quality control standards by this government contractor, Marine Mechanical determined that Eastman's letter constituted another attempt to discredit other employees.

According to Marine Mechanical, the July 2001 letter amounted to an act of misconduct in the same vein as Eastman's prior transgression in February 2001 for which he received his disciplinary warning. The defendant decided to fire him. Two company officers notified Eastman of the termination on September 27, 2001. When discussing the reasons for the action, the officers stated that Eastman was terminated for making more unfounded and meritless allegations.

On May 30, 2002, Eastman filed a complaint in the Cuyahoga County, Ohio Court of Common Pleas alleging that Marine Mechanical committed a tort under Ohio law by wrongfully firing him in violation of public policy. The public policy Eastman set forth had its source entirely in the federal statutes cited in the complaint. He contended that his expressed concerns over the quality of the parts the defendant was manufacturing as a government contractor caused his employer to silence him "by first reassigning him and removing his responsibilities for quality control and, ultimately, terminating his employment." Compl. ¶ 9, J.A. at 10. Eastman then alleged:

> 10. There is a clear public policy, manifested in federal statutes and regulations, including but not limited to 18 U.S.C. § 287 and 31 U.S.C. § 3729, prohibiting the submission of false or fraudulent claims to the military or federal government.
>
> 11. By failing to comply with its contractual obligations related to quality control for parts produced pursuant to Marine Mechanical's contracts to produce parts for use by the United States Navy, Marine Mechanical submitted false or fraudulent claims, pursuant to 18 U.S.C. § 287 and 31 U.S.C. § 3729.
>
> 12. Marine Mechanical's decision to discharge Eastman on September 27, 2001 was motivated by . . . Eastman's complaints regarding quality control related to parts produced by Marine Mechanical for use by the United States Navy pursuant to Marine Mechanical's defense contracts and the submission of claims for payment for these parts in violation of federal law.

J.A. at 10. Eastman claimed economic damages in excess of $2 million due to an inability to find employment, and he alleged unspecified non-economic damages as well.

On July 9, 2002, the defendant filed a notice of removal in the United States District Court for the Northern District of Ohio. Four weeks later, Eastman filed a motion to remand and an amended complaint; Marine Mechanical had not yet filed its answer. The amended complaint included citations to Ohio law as additional sources of public policy, to which the plaintiff referred in support of his motion to remand. The amended complaint alleged the following:

> There is a clear public policy, manifested in various state and federal statutes and regulations, including but not limited to O.R.C. 4113.5 (the Ohio Whistleblower statute), O.R.C. 2921.12 (falsification), and 18 U.S.C. § 287 and 31 U.S.C. § 3729, prohibiting the submission of false or fraudulent claims to the military or federal government. Marine Mechanical's conduct also violates the clear public policy manifested in the tort of fraud.

J.A. at 45.

In his remand motion, Eastman argued that a federal question was not well pled in his (amended) complaint because his claim was not based on federal law; rather the claim arose under Ohio law.  He also contended that citation to federal statutes as the source of public policy created no compelling federal interest, especially when state statutes are cited as well.  The district court denied the motion without a hearing on September 10, 2002 in a marginal entry stating simply that the motion was "[d]enied."  J.A. at 74.  Approximately one year later, on September 2, 2003, Eastman filed a suggestion that the district court lacked jurisdiction.  Once again, the district court disposed of the issue with a marginal entry, stating, "Motion Denied.  Court has determined it has jurisdiction."  J.A. at152.

Following the completion of discovery, Marine Mechanical filed a motion for summary judgment.  The district court granted the motion for summary judgment in a memorandum opinion and order that did not address the jurisdiction issue.  The court dismissed the case on October 21, 2003.  This timely appeal followed.

## II.

This court reviews the determination of subject matter jurisdiction *de novo. Caudill v. North Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000).  In addition, although the denial of a motion to remand a removed action for want of jurisdiction is not immediately appealable, once the lower court's decision is properly before this court on an appeal of a final judgment, as here, "it is clear from our prior decisions that we review denials of remand motions *de novo*."  *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 338 (6th Cir. 1989).

The defendant's removal notice was based on 28 U.S.C. § 1441(b), which, as noted earlier, provides that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right *arising under* the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."  *Ibid.*  (emphasis added).  District courts have original jurisdiction over "actions *arising under* the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331 (emphasis added).  "[B]ecause the 'arising under' language of § 1441(b) is almost identical to the language of 28 U.S.C. § 1331, the scope of removal jurisdiction based on the existence of a federal question under § 1441(b) is considered to be identical to the scope of federal question jurisdiction under § 1331."  *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757-58 (6th Cir. 2000).

The provisions of section 1441(b) require a defendant to demonstrate that a district court would have original jurisdiction over a civil action in order to invoke the federal court's removal jurisdiction.  *Id.* at 757.  The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction.  *Ibid.*; *Conrad v. Robinson,* 871 F.2d 612, 614 (6th Cir. 1989).  "[B]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand."  *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996); *see also Her Majesty the Queen in Right of the Province of Ontario*, 874 F.2d at 339.

A claim falls within this court's original jurisdiction under 28 U.S.C. § 1331 "only [in] those cases in which a well-pleaded Complaint establishes either that federal law creates the cause of action or that the plaintiff[']s right to relief necessarily depends on resolution of a substantial question of federal law."  *Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).  "[The well-pleaded complaint] rule provides that 'federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'"  *Loftis v. United Parcel Serv.,*

*Inc.*, 342 F.3d 509, 514 (6th Cir. 2003) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). "[T]he party who brings a suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913). Since the plaintiff is the "master of his complaint," the fact that a claim could be stated under federal law does not prevent him from stating it under state law only. *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994).

The plaintiff insists that his complaint contained "only a state law tort claim," Br. of Appellant at 25, and he assiduously avoided bringing an action under federal law, as was his choice. His reference to federal statutes was not intended to suggest that federal law provided him a right to relief, he says, but they were mentioned only as establishing the public policy that the defendant's actions violated. Consequently, he argues, citing *Franchise Tax Bd.*, "a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action." 463 U.S. at 10.

However, the "arising under" gateway into federal court in fact has two distinct portals. The well-worn thoroughfare admits litigants whose causes of action are created by federal law, that is, where federal law provides a right to relief. *See American Well Works Co. v. Layne & Bowler Co.* 241 U.S. 257, 260 (1916) (holding that "[a] suit arises under the law that creates the cause of action"); *see also Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (observing that the "'vast majority' of cases that come within [section 1331's] grant of jurisdiction are covered by Justice Holmes' statement [in *American Well Works*]"). But it is the path less traveled that concerns us today. Recently, the Supreme Court reaffirmed its long-standing, albeit controversial, interpretation of 28 U.S.C. § 1331 "that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons*, 125 S. Ct. at 2367. The knotty issue presented here is whether this is one of those "certain cases" in which federal jurisdiction is appropriate. Because there is no "'single, precise, all-embracing' test for jurisdiction over federal issues embedded in state-law claims between non-diverse parties," *id.* at 2368 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 821 (1988) (Stevens, J., concurring)), the answer requires us to examine the factors bearing on the substantiality of the federal question involved against the background of the federal-state division of responsibility for adjudicating disputes. We have engaged in the "selective process which picks the substantial causes out of the web and lays the other ones aside," *Gully v. First Nat'l. Bank in Meridian*, 299 U.S. 109, 118 (1936), and conclude that the plaintiff's public policy claim here is one of the causes that ought to be laid aside.

In deciding this case, we address a question recognized as remaining undecided in this Circuit in *Long v. Bando Manufacturing Company*, in which this court settled a slightly different jurisdictional issue. In that case, the plaintiff filed a state court action for wrongful employment termination in violation of public policy, but the source of the policy allegedly violated had its foundation in both federal and state law. This court noted that "the question whether a wrongful discharge claim based on federal public policies invokes federal jurisdiction appears to be one of first impression in this circuit." 201 F.3d at 760. However, the court based its holding that the complaint did not present a substantial federal question, and therefore "did not invoke the federal courts' 'arising under' jurisdiction," on the ground that the complaint "put forth alternate state and federal policies to support [the plaintiff's] state-law wrongful discharge claim." *Id.* at 760-61 (following *Christianson*, 486 U.S. at 809-10).

The plaintiff has attempted to bring his case within *Long*'s scope by amending the complaint to include state law as an additional public policy source. However, "[t]he existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal." *Harper v. AutoAlliance Int'l., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004). It is that unadorned snapshot of the pleadings that we examine in order to decide whether the case "arises under" federal law. Subsequent amendments are permitted, of course; but if an amendment eliminates all the federal

claims, remand becomes a discretionary decision for the district court under 28 U.S.C. § 1367(c). *Id.* at 211-12 (citing *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1288 (6th Cir. 1992) (observing that in such cases dismissal is not mandatory because supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right")). Therefore, we will confine our examination to the original complaint.

The plaintiff's complaint in this case, in its original iteration, identifies only federal law as the source of the public policy allegedly violated, and it is on that basis that we consider the jurisdictional issue. The plaintiff alleged that his termination violated public policy found in 18 U.S.C. § 287, which punishes as a felony the act of knowingly presenting "false, fictitious, or fraudulent" claims to the United States; and in 31 U.S.C. § 3729, which creates civil penalties in favor of the United States against persons who present false claims or attempt to defraud the government. Neither of these two statutes creates private rights of action to enforce individual rights, although there is a mechanism within the False Claims Act that allows private persons to initiate civil actions on behalf of the government, *see* 31 U.S.C. § 3730, and the FCA protects whistleblowers only to the extent that they follow the Act's procedures. *See* § 3730(h). The absence of a private right of action might seem to be dispositive in light of the Supreme Court's holding in *Merrell Dow*, in which the Court withheld federal jurisdiction in a state tort action alleging negligence based in part on the misbranding of a drug in violation of federal law:

> We conclude that a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

478 U.S. at 817.

However, in *Grable & Sons*, the Supreme Court cautioned that *Merrell Dow* cannot be read so simply. "*Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Grable & Sons*, 125 S. Ct. at 2370. According to *Grable & Sons*, "arising under" jurisdiction for state-law claims based on an interpretation of federal law can be found in section 1331 only when there is "not only a contested federal issue, but a substantial one"; and "federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 2367.

A "substantial" federal question involves the interpretation of a federal statute that actually is in dispute in the litigation and is so important that it "sensibly belongs in federal court." *Id.* at 2368. In *Grabel & Sons*, the Court found that the interpretation of a provision of the Internal Revenue Code governing notice to land owners whose property is to be sold to satisfy delinquent taxes presented a substantial federal question in a title dispute action removed from state court. The meaning of that statute was genuinely in dispute, and the Court found that the government's interest in fixing the means of collecting delinquent taxes justified "the experience, solicitude, and hope of uniformity that [resort to] a federal forum offers on federal issues." *Id.* at 2367.

In contrast, the meaning of the two statutes cited by the plaintiff is not in serious dispute in this case. It hardly can be disputed that submitting fraudulent claims to the federal government would contravene national policy. Nor can it be gainsaid that government contractors ought not commit felonies or defraud their customer, or that whistleblowers should not be punished for exposing their employer's fraud. Marine Mechanical does not dispute these points. Moreover, Congress' withholding a private right of action from these statutes is an important signal to its view

of the substantiality of the federal question involved. As the Supreme Court observed with respect to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*:

> We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.

*Merrell Dow*, 478 U.S. at 814. We view the statutes cited by the plaintiff in the same light.

The Ninth Circuit reached the same conclusion in *Campbell v. Aerospace Corp.*, 123 F.3d 1308 (9th Cir. 1997), when it rejected the argument that resort to the Federal False Claims Act as a source of public policy justified the exercise of federal jurisdiction over a state wrongful termination action. The court noted the obvious federal interest in protecting whistleblowers and exposing fraud against the government, but found those interests "sufficiently advanced through the federal scheme," which consisted of *qui tam* actions under the FCA and protection of whistleblowing employees who pursue such actions. *Id.* at 1315. The court reasoned that the FCA's procedures augured against finding a substantial federal question in a state action relying on the FCA as a source of public policy because a state-law tort claim so grounded would circumvent the procedures and limitations of the FCA, and a contrary finding would open a "back door" into federal court for what essentially was a state tort action. Those factors led the court to "find no compelling federal judicial interest in embracing this case as a federal question." *Ibid.*

Likewise, we conclude that the reference in the plaintiff's complaint to the federal statutes cited as a source of public policy does not create a substantial federal question in this case.

Next, and perhaps more importantly, we find that accepting jurisdiction of this state employment action would be disruptive of the sound division of labor between state and federal courts envisioned by Congress. We address this issue because "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." *Grable & Sons*, 125 S. Ct. at 2368.

In *Grable & Sons*, the Court saw little danger in accepting jurisdiction of the state title dispute in that case because it would "portend only a microscopic effect on the federal-state division of labor." *Id.* at 2368. In contrast, recognizing a substantial federal question when a violation of federal law furnished the basis for a negligence claim, as in *Merrell Dow*, would severely impact the "the concern for 'practicality and necessity' that *Franchise Tax Board* advised for the construction of § 1331 when jurisdiction is asserted because of the presence of a federal issue in a state cause of action." *Merrell Dow*, 478 U.S. at 811-12. Accepting jurisdiction in that case "would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues" and likely would "have heralded a potentially enormous shift of traditionally state cases into federal courts." *Grable & Sons*, 125 S. Ct. at 2370-71.

We view the circumstance presented by this case much closer to the concern expressed over the *Merrell Dow* template than the one staked out in *Grabel & Sons*. Employment litigation is a common occurrence in both federal and state courts. Federal legislation has provided access to the federal courts by aggrieved employees under specifically delineated circumstances, *e.g.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*; Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, but our perception is that the bulk of the judicial business in the United States in this area is conducted by the state courts. This balance would be

upset drastically if state public policy claims could be converted into federal actions by the simple expedient of referencing federal law as the source of that public policy. We believe such a dramatic shift would distort the division of judicial labor assumed by Congress under section 1331.

Given these concerns, and following the analytical methodology laid down by recent Supreme Court precedent, we hold that a state-law employment action for wrongful termination in violation of federal public policy does not present a substantial federal question over which federal courts may exercise "arising under" jurisdiction under 28 U.S.C. § 1331. Because there would be no original subject matter jurisdiction over non-diverse parties, the district court erred when it concluded it had removal jurisdiction and twice denied the plaintiff's motion to remand.

## III.

For the reasons stated, we **VACATE** the district court's judgment, **REVERSE** the orders denying the motions to remand, and **REMAND** this matter with instructions to remand the case to the Ohio state court from where it was removed.