**CITY OF DETROIT, Plaintiff,**

v.

**COMCAST OF DETROIT, INC., f/k/a Comcast Cablevision of Detroit, Inc., Defendant.**

Case No. 10–12427.

United States District Court, E.D. Michigan, Southern Division.

March 18, 2011.

Stephen F. MacGuidwin, Timothy J. Lundgren, Aaron M. Phelps, Varnum, Riddering, Schmidt & Howlett LLP, Grand Rapids, MI, for Plaintiff.

Michael S. Ashton, Fraser, Trebilcock, Lansing, MI, Robert G. Scott, Jr., Davis, Wright, Washington, DC, for Defendant.

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

DAVID M. LAWSON, District Judge.

In industries that have both a national presence and a significant local impact, like the cable television industry, which is the subject of the present case, regulators are presented with the difficult task of reconciling interests of uniformity with those of the local community. The natural tension that arises from these competing concerns is created by the need to address local issues that may be unique among individual communities, while avoiding a balkanized system of rules that make compliance by national or regional companies difficult or worse. Congress attempted to strike that balance when enacting the 1984 Cable Communications Policy Act, 47 U.S.C. § 521 *et seq.* (the Cable Act), which, among other things, regulates the procedure for cable television providers to obtain, modify, and renew franchises from local governmental units.

In 2007, the State of Michigan promulgated the Michigan Uniform Video Services Local Franchise Act, Mich. Comp. Laws § 484.3301 *et seq.*, which established a uniform franchise agreement that local municipalities must use with their cable service providers. The Michigan law substantially curtails the authority of local governments to require cable providers to furnish certain services as part of the grant of a franchise.

In the present case, the City of Detroit has filed a complaint against Comcast of Detroit, the cable provider for Detroit residents, alleging the following: (1) the state statute conflicts with and therefore is preempted by the federal law, which requires a franchisee to furnish a certain level of basic cable services; (2) Comcast refuses to negotiate with the City to renew its cable franchise and has unilaterally modified the prior franchise agreement to eliminate provisions required under the federal statutes but not the state law; (3) and the Michigan law is unconstitutional to the extent it allows Comcast to ignore the requirements of the Cable Communica-

tions Policy Act and the City's insistence that its cable franchise provide federally-mandated services. The City asks for a declaration that the Michigan law is unconstitutional, Comcast has violated federal law by not renewing its franchise agreement according to the federal statutory procedure, and Comcast is bound by a prior, expired franchise agreement; an order requiring specific performance by Comcast of the prior franchise agreement; and damages for failing to provide the services required under the franchise agreement.

The City alleges that this Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the case arises under federal law. Comcast has filed a motion to dismiss, alleging that the complaint does not state a claim and raises no substantial federal question because the Cable Act does not create a private right of action. The Court heard oral argument on the motion on December 1, 2010. The Court finds that the City alleges preemption under the Supremacy Clause of the Constitution and rights arising under the franchise agreement that the City can enforce. These claims raise a substantial federal question. Because the complaint states a cause of action that "aris[es] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, the Court has subject matter jurisdiction, and the defendant's motion to dismiss must be denied.

I.

According to the complaint, in the early 1980s, plaintiff City of Detroit issued a request for proposals for a cable system to service residents in the city of Detroit, Michigan. Ultimately, the City selected Barden Cablevision of Detroit from the submissions and held public hearings on its proposal. The City Council adopted Ordinance No. 560–H, through which the City entered into a Cable Communications

Service Franchise Agreement with Barden. The record does not provide the date of this agreement, but the plaintiff alleges that the agreement "was later amended and restated in 1985." Compl. ¶ 14. Sometime thereafter, Comcast assumed that franchise. Under the franchise, Comcast is required to provide non-discriminatory services to Detroit residents, provide PEG channel access and facilities and "I–Net" communications network services for the City government, and comply with customer service laws and regulations. The franchise expired on February 28, 2007.

Pursuant to section 546 of the Cable Act, the City and Comcast commenced negotiations to renew the franchise at some point before it expired. Comcast and the City never reached an agreement. Instead, Comcast has declared that the franchise was renewed by operation of a state law enacted in 2007 after the renewal negotiations were underway, known as the Uniform Video Services Local Franchise Act (the "Michigan Act"), Mich. Comp. Laws § 484.3301 *et seq.*

The Michigan Act required the Michigan Public Service Commission to "establish[ ] *the* standardized form for the uniform video service local franchise agreement to be used by each franchising entity in this state." Mich. Comp. Laws § 484.3302(1) (emphasis added). Local units of government are prohibited by the Michigan Act from using any other franchise agreement form or demanding fees or services that are not included in the standard form. Mich. Comp. Laws § 484.3303(8); *see also* Mich. Comp. Laws § 484.3305(3) ("On the effective date of this act, any provisions of an existing franchise that are inconsistent with or in addition to the provisions of a uniform video service local franchise agreement are unreasonable and unenforceable by the franchising entity.").

The Michigan Act also prescribed the procedure for entering into and renewing franchise agreements between cable operators and local government units. First, the cable operator must submit the proposed uniform franchise agreement to the local government unit. Within fifteen days, the government unit must inform the cable operator if the form is complete. When the form is complete, the government unit has thirty days to approve the agreement. Mich. Comp. Laws § 484.3303(2)-(3). If the government unit does not approve the proposed agreement within that time period, "the franchise agreement shall be considered complete and ... approved." Mich. Comp. Laws § 484.3303(3).

The City alleges that once the Michigan Act went into effect, Comcast refused to continue franchise negotiations. Instead, Comcast submitted the uniform franchise form to the City on February 28, 2007. According to the City, the proposed uniform agreement lacked key provisions in the existing franchise agreement (which were at the heart of the renewal negotiations) concerning consumer protections, anti-discrimination, and public, educational, and government (PEG) channels, all of which allegedly are required under the federal Cable Act. On March 16, 2007, the City approved the uniform franchise agreement subject to additional terms mandating fees for PEG channels. However, on April 23, 2007, Comcast sent the City a letter rejecting the franchise as approved and asserted that the uniform franchise agreement was in effect under the terms of the Michigan Act. Comcast continued to provide services to the City under the terms of that agreement, even though the City asserts that it never approved the franchise and Comcast's previous franchise had expired by its own terms on February 28, 2007.

The 1985 franchise agreement contained several terms favorable to the City. It required Comcast to provide free hook-ups ("drops") and service to municipal and school buildings; maintain a network to facilitate communications among City buildings; furnish additional PEG channels and at least three PEG studios, plus mobile units, staff, and equipment; make payments to the Public Benefit Corporation to support PEG channels; and provide free transmission lines for the City's PEG channels. Comcast terminated many of these features when it declared the uniform agreement to be in effect and governing its relationship with the City of Detroit.

The City characterizes Comcast as a "holdover tenant," and as such the City believes that Comcast should be bound by the terms of the original 1985 franchise agreement. Compl. ¶ 45. Where the Michigan Act stands as an obstacle to enforcing those terms, the City argues that it is preempted by the Cable Act, which itself establishes minimum service levels and prescribes a procedure for entering and renewing cable franchises.

The City's complaint states four counts: in Count I, the City alleges that Comcast violated the Cable Act by failing to follow its procedures for renewing the franchise, contends that Comcast is holding over, and seeks a declaration that Comcast is bound by the 1985 franchise agreement. The City also asks that provisions of the Michigan Act that are inconsistent with the Cable Act be declared preempted. In Count II, the City alleges that Comcast refuses to fulfill the terms of the 1985 agreement, and the parts of the Michigan Act that nullify those terms are preempted by federal law. The City alleges that Comcast's refusal has caused it damages, which it seeks in addition to specific performance of the 1985 agreement. In

Count III, the City identifies several requirements that the Cable Act imposes on cable operators, which the City contends it has the authority to enforce as a "franchising authority," but which the Michigan Acts prevents it from enforcing. The City asks for a declaration that the Cable Act preempts the Michigan Act in those instances. Finally, Count IV alleges that the Michigan Act violates a provision of the state constitution that vests the authority in local units of government to regulate and control public spaces and transact business with public utilities for their use.

## II.

The defendant bases its motion to dismiss on Federal Rule of Civil Procedure 12(b)(6), arguing that the City's complaint fails to state a claim upon which relief can be granted. The argument, as the Court understands it, is that (1) the Cable Act does not create an express or implied private right of action in favor of a franchising authority under federal law; and (2) because both local *and* state governments are included in the definition of "franchising authority" under the Cable Act, and the City derives its authority to govern from the State, Congress could not have authorized local government units to challenge state law against the requirements of the Cable Act.

The motion grounds perhaps suggest that the Court does not have subject matter jurisdiction over the claims brought in the complaint, although the defendant has not asserted a frank jurisdictional challenge. The Sixth Circuit has warned that attacks on the merits should not be confounded with jurisdictional challenges and has admonished courts to be more exacting when addressing challenges that are phrased as an attack on jurisdiction. *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 518–19 (6th Cir.2006) ("Clarity would be facilitated ... if courts and litigants

used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." (quoting *Eberhart v. United States*, 546 U.S. 12, 16, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam), and citing *Kontrick v. Ryan*, 540 U.S. 443, 453, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004))).

■ Nonetheless, the Court also is mindful of Supreme Court precedent holding that federal question jurisdiction under 28 U.S.C. § 1331 will not be found when the federal statute invoked by a plaintiff does not create a private right of action. *See Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (holding that "the congressional determination that there should be no federal remedy for the violation of [a] federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction"); *see also Care Choices HMO v. Engstrom*, 330 F.3d 786, 788 (6th Cir.2003). In determining whether the plaintiff has stated a claim, therefore, the Court also must decide subject matter jurisdiction. The Court has an independent duty to determine its power and authority to proceed "[b]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile." *Brown v. Francis*, 75 F.3d 860, 864–65 (3d Cir.1996); *see also Her Majesty the Queen in Right of the Province of Ontario*, 874 F.2d 332, 339 (6th Cir.1989); *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 607 (6th Cir.1998) (reiterating that "[q]uite aside from whether the parties raise jurisdictional issues themselves—or even attempt to consent or

agree to federal jurisdiction—federal courts have an independent obligation to investigate and police the boundaries of their own jurisdiction").

Rule 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). When deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir.1996). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Nat'l Res., Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* "To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570[, 127 S.Ct. 1955, 167 L.Ed.2d 929] (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949[, 173 L.Ed.2d 868] (2009)." *Fabian v. Fulmer Helmets, Inc.,* 628 F.3d 278, 280 (6th Cir.2010).

The main thrust of the plaintiff's complaint is that the only viable franchise agreement is the 1985 agreement, which the defendant has breached in a number of ways by not providing certain cable services to the City and its residents, and therefore the City is entitled to specific performance and damages. To support that argument, the City contends that (1) the Cable Act sets forth the procedures for cable operators to renew franchise agreements, which Comcast spurned in favor of the inconsistent procedure prescribed by the Michigan Act; (2) the Cable Act sets forth the services a cable operator must provide when performing under a franchise agreement with a franchising authority; (3) to the extent that the Michigan Act authorizes renewal procedures and mandatory service levels that conflict with the Cable Act, they are preempted by the Cable Act under the authority of the Supremacy Clause; and (4) to the extent that the Michigan Act interferes with the City's authority to regulate Comcast as a public utility, the Act violates the Michigan constitution.

■ The defendant views the City's complaint as an effort to enforce provisions of the Cable Act, which the defendant believes is not viable because the Cable Act does not confer a right of action on a franchise authority to enforce its terms against a cable operator. But the defendant's argument misses the mark. The Cable Act, specifically 47 U.S.C. § 531(c) ("A franchising authority may enforce any requirement in any franchise regarding the providing or use of such channel capacity."), confers explicit authority on a franchising authority to enforce PEG channel requirements in an existing franchise agreement. *See City of Dearborn v. Comcast of Mich. III, Inc.,* No. 08–10156, 2008 WL 4534167, at *5 (E.D.Mich. Oct. 3, 2008) (citing *Denver Area Educ. Telecommc'ns Consortium, Inc. v. FCC,* 518 U.S. 727, 789, 116 S.Ct. 2374, 135 L.Ed.2d 888 (1996) ("[§ 531(b)] authorize[s] local franchise authorities to require cable operators to set aside channel capacity for PEG [channel] access when seeking new franchises or

renewal of old ones" (Kennedy, J., concurring and dissenting)); *Goldberg v. Cablevision Sys. Corp.,* 261 F.3d 318, 320–21 (2d Cir.2001) (a franchising authority can "enforce any requirement in any franchise [agreement] regarding the providing or use of [PEG] channel capacity") (citation omitted)); *Time Warner Entm't Co., L.P. v. FCC,* 93 F.3d 957, 972 (D.C.Cir.1996) (franchising authorities may mandate PEG channel access as a franchise condition); *Time Warner Cable of N.Y. v. City of New York,* 943 F.Supp. 1357, 1367 (S.D.N.Y. 1996) ("The [1984 Act gave] . . . a franchising authority the power to require an operator to provide PEG channels"). Section 552 contains similar language concerning customer service requirements. 47 U.S.C. § 552(a) ("A franchising authority may establish and enforce . . . customer service requirements of the cable operator. . . ."). Comcast's argument that these sections are merely savings clauses finds no support in the statutory text or legislative history, and Comcast has cited none.

■ But the City's complaint does not purport to seek enforcement of the Cable Act itself. As the plaintiff explained, "[t]he City of Detroit filed this lawsuit to enforce a federally mandated cable *franchise* between it and Comcast." Pl.'s Br. in Resp. to Mot. Dismiss at 1 (emphasis added). The City has a common law right to enforce a franchise agreement against a public utility for breach of a franchise agreement. *See City of Detroit v. Detroit United Rwy.,* 215 Mich. 401, 184 N.W. 516 (1921); *see also City of Niles v. Michigan Gas & Elec. Co.,* 273 Mich. 255, 262, 262 N.W. 900, 902 (1935). At its most basic level, the City's complaint pleads a claim of breach of contract and therefore states a viable cause of action.

A more fundamental question is whether this Court has subject matter jurisdiction over such a claim. As the basis of jurisdiction, the City has invoked 28 U.S.C. § 1331, which authorizes the Court to adjudicate "all civil actions arising under the Constitution, laws, or treaties of the United States."

■ "A complaint arises under federal law if it: (1) states a federal cause of action; (2) includes state-law claims that necessarily depend on a substantial and disputed federal issue; (3) raises state-law claims that are completely preempted by federal law; or (4) artfully pleads state-law claims that amount to federal-law claims in disguise." *Ohio ex rel. Skaggs v. Brunner,* 629 F.3d 527, 530 (6th Cir.2010) (citing *Mikulski v. Centerior Energy Corp.,* 501 F.3d 555, 560 (6th Cir.2007) (en banc)). The last two categories do not come into play and need not be considered. As for the first, it is well recognized that "[a] suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916). The City maintains that because sections 531(c) and 552(a) of the Cable Act allow franchise authorities to "enforce" PEG and customer service provisions of franchise agreements, the Cable Act creates the present cause of action. However, as noted above, the City already had the right to enforce contracts with public utility providers even before the Cable Act was enacted. To say that the Cable Act "created" the cause of action stated in the complaint says too much, since the purpose of the Cable Act was to bring order to the "deliberately structured dualism" that characterized the regulatory atmosphere in the industry at the time. *Alliance for Cmty. Media v. FCC,* 529 F.3d 763, 767–68 (6th Cir.2008) (quoting *American Civil Liberties Union v. FCC,* 523 F.2d 1344 (9th Cir.1975)).

■ A state law claim may still arise under federal law, however, "even though Congress has not created a private right of action, if the vindication of a right under

state law depends on the validity, construction, or effect of federal law." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir.2007) (en banc) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "[I]t takes more than a federal element to open the 'arising under' door" to the federal courthouse. *Id.* at 568 (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006)). " '[A]rising under' jurisdiction for state-law claims based on an interpretation of federal law can be found in section 1331 only when there is 'not only a contested federal issue, but a substantial one'; and 'federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.' " *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 552 (6th Cir.2006) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005)).

█ "A 'substantial' federal question involves the interpretation of a federal statute that actually is in dispute in the litigation and is so important that it 'sensibly belongs in federal court.' " *Eastman*, 438 F.3d at 552 (quoting *Grable & Sons*, 545 U.S. at 319, 125 S.Ct. 2363). The Sixth Circuit looks to the following factors "in assessing this point: (1) whether a federal agency is involved; (2) whether the federal question is important; (3) whether a decision on the federal question will resolve the parties' dispute; and (4) how many other cases a decision on the issue in this case will resolve." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 476 (6th Cir.2008) (citing *Mikulski*, 501 F.3d at 570).

█ In seeking to enforce the 1985 agreement against Comcast as a holdover tenant, the City refuses to recognize Comcast's current franchise because the man-

ner in which it was obtained violated the Cable Act. In addition, the City contends in its complaint that the current franchise agreement allows Comcast to avoid responsibilities required of it by the Cable Act. There is no federal agency involved, although the issues touch on areas administered by the Federal Communications Commission. The federal questions raised by the City's complaint are important. In fact, they strike at the heart of the Cable Act's purpose, which is to "establish a national policy concerning cable communications; . . . establish franchise procedures and standards which encourage the growth and development of cable systems and which assure that cable systems are responsive to the needs and interests of the local community; . . . establish guidelines for the exercise of Federal, state, and local authority with respect to the regulation of cable systems; . . . and establish an orderly process for franchise renewal which protects cable operators against unfair denials of renewal. . . ." 47 U.S.C. § 521(1), (2), (3), & (5).

When Congress enacted the Cable Act in 1985 to add Title VI to the Communications Act of 1934, there existed an "illdefined [*sic*] . . . state of regulatory uncertainty" created by the overlapping authority held by the FCC and local municipalities. *Alliance for Cmty. Media*, 529 F.3d at 767–68. The amending legislation "preserv[ed] the critical role of municipal governments in the franchise process . . . while affirming the FCC's exclusive jurisdiction over cable service, and overall facilities which relate to such service." *Id.* at 768 (quoting *City of New York v. FCC*, 814 F.2d 720, 723 (D.C.Cir.1987)). The Act, together with the Cable Television Consumer Protection and Competition Act, Pub.L. No. 102–385, 106 Stat. 1460, passed in 1992, establishes a minimum level of services, PEG channel access, consumer

protections, and anti-discrimination requirements that franchising authorities must include in their franchise agreements with cable operators. *See Time Warner Entm't Co., L.P. v. FCC*, 93 F.3d 957, 966 (D.C.Cir.1996). The national legislation establishes a floor and permits local franchising authorities to negotiate with cable operators for higher levels of service, and it prohibits laws and practices that descend below those levels. *See* 47 U.S.C. § 556(c) (stating that "any provision of law of any State, political subdivision, or agency thereof, or franchising authority, or any provision of any franchise granted by such authority, which is inconsistent with this chapter shall be deemed to be preempted and superseded").

The City alleges that the Michigan Act authorizes—in fact, mandates—franchise agreements with cable operators that countenance service levels below the federal requirements. In other words, the City contends that state law has upset the allocation of responsibility for regulating cable services that the Cable Act assiduously attempted to balance. The City insists that the Michigan Act is expressly preempted by the Cable Act, *see* 47 U.S.C. § 556(c), and the preemptive language in the statute is enforceable through the Supremacy Clause. The Supremacy Clause itself furnishes a basis for federal question jurisdiction. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."). Moreover, the features of the basic service requirements mandated by Congress is a federal question that ought to be adjudicated in a federal forum.

Resolution of the federal question—what the Cable Act requires and how the Michigan Act measures up to it—is necessary to determine the parties' dispute. If the Court determines that the Michigan Act simply puts a finer point on the manner in which cable operators can fulfill the federal requirements, then Comcast will be able to argue that it has complied with the present franchise. If the Michigan Act authorizes a federally unacceptable level of services, the City will be able to demand performance and, perhaps, damages. Answering these questions also may resolve other disputes by local units of government with their incumbent cable service providers.

The Court concludes that the complaint raises a substantial, contested federal issue.

The Court also must assess whether the exercise of jurisdiction would upset the balance of federal and state responsibilities set forth in the statute. In *Mikulski*, the Sixth Circuit determined that the balance would be upset by exercising jurisdiction over a fraud claim made by a shareholder who alleged that management overstated earnings by accounting for expenses in a way not allowed by the Internal Revenue Code. The court found that allowing federal jurisdiction would "open[ ] the federal courts to an undesirable quantity of litigation" by opening the federal courts "to any dispute over the meaning or effect of virtually any provision in the entire federal tax code." *Mikulski*, 501 F.3d at 573. In *Eastman*, the court found no federal jurisdiction over a wrongful discharge claim in which the plaintiff alleged that his firing violated public policy when he blew the whistle on his employer for violating federal contractor regulations. No substantial federal question was found in part because the "balance [of judicial labor in employment cases between state and federal

courts] would be upset drastically if state public policy claims could be converted into federal actions by the simple expedient of referencing federal law as the source of that public policy." *Eastman,* 438 F.3d at 553.

The Court does not find that concern to be a serious one here. The issue presented is a narrow one: does the level of service authorized by the Michigan Act meet the requirements Congress established in the Cable Act. The dispute is confined to the relationship between a local government—a franchising authority—and an incumbent cable operator. Instead, the Court views the present case as similar to the dispute in *Grable & Sons,* where the Supreme Court saw little danger in accepting jurisdiction of the state title dispute in that case because it would "portend only a microscopic effect on the federal-state division of labor." *Grable & Sons,* 545 U.S. at 315, 125 S.Ct. 2363.

The Court finds that the complaint raises a substantial federal question and subject matter jurisdiction exists under 28 U.S.C. § 1331.

The question remains whether the Michigan Act in fact authorizes cable operators to provide substandard levels of service in violation of federal law. Comcast argues that federal law recognizes that States may be franchising authorities the same as municipalities, federal law does not authorize interference with the relationship between a State and its political subdivisions, it has complied with the state statute, which controls, and the City has no grounds to complain about service levels. That all may be true, but the argument ignores the federal proscription against *any* franchising authority allowing cable operators to furnish less than the basic level of services, imposing a non-uniform rate structure, or otherwise discriminating in providing services. The response to the argument must be the same as when Com-

cast advanced it in another case in this Court: if state law allows what federal prohibits, "it matters not whether the franchising authority is the state and/or a municipality; the law is preempted." *City of Dearborn v. Comcast of Mich. III, Inc.,* 2008 WL 4534167, at *6.

The parties have not addressed in their motion papers the particulars of the Michigan Act and how it might contravene federal law. That question must await another day. For now, however, the Court finds that the complaint states a claim for which relief may be granted over which this Court has subject matter jurisdiction.

## III.

The Court finds that the complaint states a claim for breach of a franchise agreement, which is a recognized claim. The claim involves a substantial federal question. The Court expresses no opinion on the merits. However, dismissal under Federal Rule of Civil Procedure 12(b)(6) is not called for at this time.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt. # 5] is **DENIED.**

It is further **ORDERED** that counsel for the parties appear before the Court on **April 18, 2011 at 10:00 a.m.** to discuss further case management deadlines.